483 A.2d 780

**Charles Brian HOWELL**

v.

**STATE of Maryland.**

**No. 150, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

Nov. 14, 1984.

**464**

William Connelly, Camp Springs, with whom were Stern & Connelly, Camp Springs, on the brief, for appellant.

Carmina Szunyog Hughes, Asst. Atty. Gen., with whom were Stephen H. Sachs, Atty. Gen. of Md., Arthur A. Marshall, Jr., State's Atty. for Prince George's County and Carl Buchheister, Asst. State's Atty., for Prince George's County on the brief, for appellee.

Argued before GILBERT, C.J., MOYLAN, J., and JAMES C. MORTON, Jr., Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

MOYLAN, Judge.

This appeal by Charles Brian Howell is a frustrating one. The cause for frustration is that the slippery quality of its lone argument is not an isolated instance of fuzzy and imprecise logic and thought but sadly representative of a growing trend toward such fuzziness and imprecision. Our rejection of the claim may serve one normative purpose: to help lay to rest the myth that some undifferentiated exclusionary rule hovers vaguely above us like a precept of natural law, waiting to be invoked whenever some reviewing authority is displeased with the course of investigative behavior. Our response to this appellant is an admonition to all appellants, "Don't speak to us of *the* exclusionary rule. There is no such thing! There are various actual or potential exclusionary rules. Which one precisely do you invoke? Where is its source? What are the criteria for its successful invocation? Are we talking of *Mapp* or Bouse or Never-Never Land?"

It seems to be the last of these in which the appellant seeks relief from his grand theft conviction by Judge James H. Taylor, on an agreed statement of facts, in the Circuit Court for Prince George's County. He claims that his pretrial motion to suppress the fruits of an executed search and seizure warrant was erroneously denied by Judge Ernest A. Loveless.

The appellant claims that the applicant for the warrant failed to sign the application as required by Md.Ann.Code Article 27, § 551(a) (1982 Repl.Vol. & Supp.1984), which provides, in pertinent part, that the application be "signed ... by the applicant." That is quite true. That is also utterly immaterial to the issue of suppression. How do we reject this claim? Let us count the ways.

### 1. *Mapp Does Not Touch a Violation of Local Statute*

■ The search and seizure warrant, applied for by Corporal Leonard J. Daleo and issued by Judge Bess B. Lavine, was a model of Fourth Amendment propriety. It was based upon 2–½ tightly packed pages of bounteous probable cause in the form of a sworn affidavit submitted as part of the application. It was supported by the oath of Corporal Daleo, sworn to in the presence of Judge Lavine and acknowledged by her. Both the warrant application and the warrant itself spelled out with punctilious particularity the place to be searched and the things to be seized. In all candor, the appellant himself does not press the claim that the Fourth Amendment itself was violated.

The Fourth Amendment exclusionary rule was deemed to be a part of the due process clause of the Fourteenth Amendment and thereby imposed upon the states by *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). The exclusionary rule of *Mapp,* by definition, can reach down to the states only when there is a violation of federal constitutional law. In dealing with the alleged violation of another subsection of this same Article 27, § 551, we held unequivocally in *In Re Special Investigation No. 228,* 54 Md.App. 149, 163, 458 A.2d 820 (1983):

"This requirement in the search warrant law was of sub-constitutional status, since neither Article 26 of the Maryland Declaration of Rights nor the Fourth Amendment included such a requirement. The Fourth Amendment Exclusionary Rule, even after it was held binding on the states in 1961, would not apply to a violation of this provision, since *the Exclusionary Rule of Mapp, of jurisdictional necessity, can apply only to a violation of federal law and not of state law and only to a violation of the United States Constitution and not of a mere statute.* Clearly, the new provision created a possible instance of statutory noncompliance where the return of property was called for but where the exclusion of evidence was not." (Emphasis supplied).

### 2. *Mapp, Even If Otherwise Applicable, Would Not Call for Suppression Where Officer Acted in Good Faith Reliance on a Warrant*

Even if we were dealing with a violation of the Federal Constitution and not a mere local statute, the heavy social price of excluding probative evidence, paid only to deter unreasonable police activity, would not be incurred where the officer had acted in good faith reliance on a judicially issued search and seizure warrant. *United States v. Leon,* 468 U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); *Massachusetts v. Sheppard,* 468 U.S. ——, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984).

The exclusionary rule of *Mapp,* therefore, is doubly unavailing as a sanction against the constitutionally unoffending and "good faith" search in this case. The only other federal exclusionary rule that could have any conceivable applicability in Maryland is 18 U.S.C., § 2518(10)(a), dealing with unlawful wiretapping and electronic eavesdropping, a subject matter not remotely pertinent to this case.[1]

### 3. *There Was No Violation of the Maryland Constitution*

■ There is no alternative possibility for the appellant to rely upon independent state grounds by showing a violation of the Maryland Constitution. Article 26 of the Maryland Declaration of Rights and the Federal Fourth Amendment have traditionally and invariably been interpreted so as to be in *pari materia. Gahan v. State,* 290 Md. 310, 319–322, 430 A.2d 49 (1981); *Liichow v. State,* 288 Md. 502, 509, n. 1, 419 A.2d 1041 (1980); *Merrick v. State,* 283 Md. 1, 4, n. 2, 389 A.2d 328 (1978); *Givner v. State,* 210 Md. 484, 492, 124 A.2d 764 (1956); *Blum v. State,* 94 Md. 375, 382, 51 A. 26

---

1. The counterpart Maryland exclusionary rule, Md.Cts. & Jud.Proc. Code Ann., § 10–405 (1984 Repl.Vol.), though somewhat broader than the federal exclusionary rule, also deals only with the subject of wiretapping and electronic eavesdropping and has no remote applicability to this case.

(1902). Since there was no violation of the Fourth Amendment, it follows that neither was there a violation of the coterminous Article 26 of the Maryland Declaration of Rights.[2]

4. *A Sub-constitutional Violation of a Maryland Statute*

■ Recognizing grudgingly the inapplicability of *Mapp* and the non-existence of a Maryland counterpart, the appellant advances the incendiary proposal that if there is no available exclusionary rule, we should create one. Even though the judicial branch of government may arguably fashion an exclusionary rule of evidence to implement a constitutional provision, it is not properly a judicial function to create a sanction at the sub-constitutional level. The jealously guarded prerogative of the legislative branch to announce the law in the first instance implies the concomitant prerogative to provide, or in its wisdom not to provide, the sanction for a violation. We judges but read the legislative intent and do not make policy decisions of our own.

With respect to § 551, the legislative intent is clear. By Chapter 74 of the Acts of 1958, the Legislature amended § 551 by making several minor stylistic changes. The amendment was significant not so much for the minor changes that were made but for another proposed change that was not made. The original version of House Bill 37

---

2. Maryland, of course, has no exclusionary rule. Following the lead of Judge Cardozo in *People v. Defore,* 242 N.Y. 13, 150 N.E. 585 (1926), Maryland is one of the approximately thirty jurisdictions that affirmatively rejected the exclusionary rule. *Lawrence v. State,* 103 Md. 17, 63 A. 96 (1906); *Meisinger v. State,* 155 Md. 195, 141 A. 536 (1928); *Lambert v. State,* 196 Md. 57, 75 A.2d 327 (1950); *In Re Special Investigation No. 228, supra,* 54 Md.App. at 160, 458 A.2d 820. The Maryland Legislature enacted a limited exclusionary rule, known as the Bouse Act, by Chapter 194 of the Acts of 1929. It specifically exempted all felonies and even certain of the more serious misdemeanors. In 1973, moreover, Maryland repealed even the limited statutory exclusion called for by the Bouse Act.

provided for a broad exclusionary rule, covering both violations of § 551 and unconstitutional searches generally. That proposed change was struck from the bill prior to its enactment. The sanction of exclusion for a violation of § 551 has, therefore, not only never been adopted; it has been affirmatively rejected.

Section 551, moreover, has affirmatively provided a different sanction—the return of the goods to the owner. Even that sanction, however, is available only for violations of certain provisions of § 551 and not for others. In *In Re Special Investigation No. 228, supra,* at 54 Md.App. 167–169, 458 A.2d 820, we observed that the section's "sanction is woefully incomplete when measured against its requirements." We pointed out that, "Subsection (a) has established no less than nine requirements for the valid issuance of a warrant," of which the third is the requirement, here pertinent, "that it be signed by the applicant." We went on to point out that "by its express terms, the sanction of § 551 is only available for a failure to comply with requirement 6 [the probable cause requirement]." Thus, even the lesser, alternative sanction provided by § 551 would not be available for the failure of the applicant to sign the warrant.

### Conclusion

In short, it is difficult to conceive of a contention more berefit of support, in logic or in law. The appellant, in his brief, candidly acknowledges that "in the lower court neither the State nor the Defendant's Counsel were able to locate an appellate decision on point." At the appellate level, the appellant cites no cases or other legal authorities. He constructs no argument with respect to the appropriate sanction. All of his discussion goes to the fact that the failure of the applicant to sign the application is, indeed, a violation. From the violation, he makes a totally conclusory leap of faith to the sanction: "There was not substantial compliance with the statute and the defect in the application is fatal. The Motion to Suppress should have been grant-

ed." The appellant just assumes an exclusionary rule materializing out of the thin air, with no thought of where it comes from, whether it is federal or state, whether it is constitutional or sub-constitutional, whether it is judicial or legislative in its provenance, whether it is a rule newborn in that very instant or an application of a preexisting rule, whether its purpose is remedial or deterrent, whether it is retroactive or only prospective, whether it is limited to the State's case in chief or has more peripheral repercussions. In reaching for an *ad hoc* result, the appellant has not crafted a careful product.

We cannot, and indeed would not, make the leap of faith with him. We do not conclude that the violation at bar was "fatal." We do not even know what the implications of being "fatal" might be. We know only, and we so hold, that the evidence in this case was properly not suppressed.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.